IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34936-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MARK NJORGE NYUTU, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Mark Njorge Nyutu appeals after his conviction for second degree assault. He argues that the trial court erred by admitting his custodial statements without adequate proof that the arresting officer provided proper *Miranda*[1] warnings. Mr. Nyutu did not raise this argument below. Because the claimed error is not manifest, we decline to review it and affirm Mr. Nyutu's conviction.

## FACTS

Faatuiolemoutu Laolagi was working as a bouncer at Stubblefields, a large bar in Pullman, Washington. All bouncers at Stubblefields wear a shirt that says "Stubblefields"

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

on the front and "Staff" on the back. Report of Proceedings (RP) at 116. Shortly before

closing time at 2:00 a.m., Mr. Laolagi noticed Mr. Nyutu leaning up against the bar with

his back, which is against bar policy. Mr. Laolagi approached Mr. Nyutu, moved him

away from the bar, and told him he could not lean against the bar. Mr. Nyutu refused, and

Mr. Laolagi told him he was a bouncer. Mr. Nyutu became upset and agitated, and began

swearing at and threatening Mr. Laolagi. Several security cameras at the bar recorded

portions of the incident.

Because Mr. Nyutu was making threats, Mr. Laolagi signaled other employees to

come over and informed Mr. Nyutu that he had to leave the bar. DeMaundray Woolridge,

another employee, came over to assist Mr. Laolagi. At the same time, Mr. Nyutu signaled

one of his friends to come over. After a brief conversation, the employees began moving

Mr. Nyutu down some stairs and out of the bar. Mr. Nyutu had a beer bottle in his left

hand.

At this point, Mr. Nyutu swung at and punched Mr. Laolagi with his right hand

and said, "man, I told you." RP at 164. Mr. Laolagi tackled him in response and the two

men both went down. The beer bottle shattered at some point. Mr. Laolagi was on top of

Mr. Nyutu, who continued to punch Mr. Laolagi in the head but now with the hand

2

holding the beer bottle. Mr. Laolagi suffered substantial injuries to his head. Law enforcement officers arrived at the scene.

Officer Thomas Cornish conducted a preliminary investigation and determined there was probable cause to arrest Mr. Nyutu. Officer Cornish provided *Miranda* warnings to Mr. Nyutu, and Mr. Nyutu said he wanted to provide a statement. At the police station, Officer Cornish told Mr. Nyutu that the interview was being recorded. During the interview, Mr. Nyutu acknowledged he knew he had a broken beer bottle in his hand when he punched Mr. Laolagi.

The State charged Mr. Nyutu with second degree assault. The trial court held a CrR 3.5 hearing to determine the admissibility of Mr. Nyutu's statements to police. At the hearing, the State submitted Officer Cornish's affidavit of probable cause. Mr. Nyutu did not object to the State's submission; had he, it likely would have prompted the State to call Officer Cornish as a witness. The State did not call any witnesses. The trial court asked Mr. Nyutu whether he had any evidence to offer, and he said he did not.

The trial court considered Officer Cornish's affidavit and read it into the record. The portion relevant to the appeal reads:

> "I placed Nyutu under arrest for assault in the second degree. *Nyutu was advised of his constitutional rights*, and that he was being audio and digitally recorded. Nyutu said he understood. Once at the station, Nyutu said he wanted to tell his side of the story. Nyutu said Laolagi pushed him

at the bar. He said Laolagi was not wearing a staff shirt, and he did not
know Laolagi was an employee. He said he reacted and punched Laolagi
with his right hand. He said they both fell to the ground. He said he
punched Laolagi because he felt like he was getting attacked. He said the
beer bottle was in his hand, but he was unsure how the bottle got broken.
He said it happened so fast he could not recall his exact actions after being
pushed."

RP at 8-9 (emphasis added).

The State provided argument why Mr. Nyutu's statements were admissible at trial.

The trial court then asked Mr. Nyutu if he had any argument. Mr. Nyutu replied, "No

comment, Your Honor. We'll just let the Court rely on the record." RP at 10.

The court then orally ruled:

According to this report, defendant was placed under arrest, given
his full *Miranda* warnings . . . . He did acknowledge that he understood the
rights . . . [and] once he arrived at the police station, Mr. Nyutu . . . initiated
making a statement saying he wanted to tell his side of the story . . . .
[T]he Court is satisfied that he was advised of [his constitutional]
rights, acknowledged that he understood, he initiated the contact to tell his
side of the story. So my conclusion here will be that *Miranda* was honored,
that he understood his rights, and he knowingly, voluntarily, and
intelligently made the decision to waive those rights, so I will admit all
statements at trial.

RP at 10-11.

At trial, Officer Cornish testified about Mr. Nyutu's statements. The State also

showed the jury portions of the recording containing Mr. Nyutu's statements. During

4

closing arguments, the State again referred to Mr. Nyutu's statements and played the recording.

The jury found Mr. Nyutu guilty of second degree assault, and the trial court sentenced Mr. Nyutu to three months of confinement. He now appeals.

## ANALYSIS

RESORT TO ORAL FINDINGS AND CONCLUSIONS

Preliminarily, Mr. Nyutu notes that the trial court failed to enter findings and conclusions following the CrR 3.5 hearing. He recognizes that remand for entry of such findings and conclusions is not necessarily required.

A trial court's failure to enter written findings and conclusions is harmless when the court's oral ruling is sufficient to permit appellate review. *State v. Cunningham*, 116 Wn. App. 219, 226, 65 P.3d 325 (2003). Here, the trial court's oral ruling is sufficient for our review.

FAILURE TO PRESERVE ISSUE

Mr. Nyutu contends the State did not meet its burden to prove law enforcement gave him adequate *Miranda* warnings. His central argument is that the State only provided Officer Cornish's probable cause affidavit at the CrR 3.5 hearing, which was

not specific enough to support the trial court's finding that adequate warnings were given. But Mr. Nyutu did not make this argument below.

A party generally may not raise an argument on appeal that the party did not make to the trial court. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). "There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal." *State v. Lazcano*, 188 Wn. App. 338, 356, 354 P.3d 233 (2015).

RAP 2.5(a)(3) is a commonly invoked exception that permits review of an unpreserved claim of error. "To meet RAP 2.5(a) and raise an error for the first time on appeal, an appellant must demonstrate that (1) the error is manifest and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *McFarland*, 127 Wn.2d at 333.

Here, the facts necessary to adjudicate the claimed error are not present in the record before us. Specifically, we do not know exactly what rights and warnings Officer Cornish provided to Mr. Nyutu prior to custodial questioning. As mentioned previously,

6

Mr. Nyutu offered no evidence or argument at the CrR 3.5 hearing. He did not argue that the *Miranda* warnings were inadequate. Because Mr. Nyutu failed to make this argument below, the State did not request to reopen the record so it could call Officer Cornish to explain the nature and extent of the warnings he provided. We conclude that the unpreserved claim of error is not manifest and decline to consider Mr. Nyutu's argument.

Affirmed.[2]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

I CONCUR:

Korsmo, J.

---

[2] Although the record on appeal is insufficient for us to consider Mr. Nyutu's claimed error, he may raise the issue in a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

No. 34936-5-III

SIDDOWAY, J. (concurring in result) — I agree that Mark Njorge Nyutu's conviction should be affirmed. "Where the record indicates there is substantial evidence upon which a trial court could find by a preponderance of evidence that a confession was given voluntarily, the trial court's determination of voluntariness will not be disturbed on appeal." *State v. Woods*, 34 Wn. App. 750, 759, 665 P.2d 895 (1983) (citing *State v. Snook*, 18 Wn. App. 339, 348, 567 P.2d 687 (1977)). While the affidavit of probable cause stated only that "Nyutu was advised of his constitutional rights," Clerk's Papers at 3, there was no evidence presented to the trial court during the CrR 3.5 hearing to suggest that Mr. Nyutu's advisement of his rights was not adequate. Given the applicable burden of proof and nothing to suggest an insufficient advisement, the trial court could reasonably find from the statement in the affidavit of probable cause that the officer or officers who undertook to advise Mr. Nyutu of his rights did so correctly and sufficiently.

_____
Siddoway, J.

1